1
2
3
4
5
6
7
8           UNITED STATES DISTRICT COURT
9        FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11   JOHN MARK BUENO,                          No.  2:15-cv-0206-GEB-EFB P
12               Petitioner,
13        vs.
14   SCOTT FRAUENHEIM,                         FINDINGS AND RECOMMENDATIONS
15               Respondent.
16

17        Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a judgment of conviction entered

19   against him on July 15, 2011, in the Solano County Superior Court on charges related to an

20   assault on a peace officer.  He seeks federal habeas relief on the following grounds: (1) the trial

21   violated his constitutional rights in denying his requests for discovery; (2) the trial court violated

22   his rights to present a defense and to cross-examine witnesses when it limited his cross-

23   examination of a prosecution witness; and (3) prosecutorial misconduct violated his right to due

24   process.  Upon careful consideration of the record and the applicable law, the undersigned

25   recommends that petitioner's application for habeas corpus relief be denied.

26   /////

27   /////

28   /////

1

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the First Appellate District provided the following factual summary:

> John Mark Bueno appeals from a judgment upon a jury verdict finding him guilty of assault on a peace officer with a semiautomatic firearm (Pen.Code,[1] § 245, subd. (d)(2)); possession of a firearm by a felon (§ 12021, subd. (a)(1)); possession of a concealed firearm on the person of a felon (§ 12025, subd. (a)(2)); carrying a loaded firearm (§ 12031, subd. (a)(1)); unlawful possession of ammunition (§ 12316, subd. (b)(1)); resisting a peace officer (§ 148, subd. (a)(1)), and giving false information to a police officer (§ 148.9, subd. (a)). The jury also found true the allegation that defendant personally used a firearm within the meaning of section 12022.5, subdivisions (a) and (d) in the commission of the assault offense; that he was convicted of a prior felony within the meaning of section 12031, subdivision (a)(2)(A) in connection with the carrying a loaded firearm offense; and that he personally used a firearm within the meaning of section 12022, subdivision (a)(1) during the unlawful possession of ammunition count. Defendant contends that the trial court's ruling precluding his attempt to impeach Officer Shephard with his preliminary hearing testimony deprived him of a fair trial. He also argues that the trial court abused its discretion in denying his Pitchess[2] motion. We affirm.
>
> ### I. FACTS
>
> At approximately 10:00 a.m. on September 25, 2009, Officer Michael Shephard was on patrol duty in Suisun. Shephard, Sergeant Stec, and Officer Sousa were preparing to conduct probation searches and met at the Bonfaire Market to plan their day. While there, Shephard noticed defendant drive into the parking lot with two passengers and look toward the officers. Defendant was driving a dark-colored Honda. One of the passengers went into the market. Defendant got out of the car and circled it while looking back at the officers. After defendant exited from the parking lot, Shephard followed in his patrol car.
>
> Within a mile from the market, Shephard noticed that the speed of defendant's car was accelerating. He also saw that the female passenger in the car was not wearing her seatbelt properly. Shephard continued to follow defendant's car which was then travelling beyond the speed limit. Defendant then suddenly pulled over and stopped the car. Shephard initiated a traffic stop. He approached the driver's side and informed defendant that he had

---

[1]  Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]  *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

2

stopped him for speeding.   Shephard could smell the odor of marijuana coming from the car.

Defendant became argumentative and said that he was not speeding.  He did not have a driver's license and could not provide a driver's license number.  He gave his date of birth and said his name was Joshua Bueno, but misspelled Joshua.  Shephard requested a DMV check and the radio dispatcher told him there was no match based on the information provided.   Shephard returned to defendant's car and asked him to step out of the vehicle.  Shephard told defendant he was going to do a patsearch for weapons. Defendant was again argumentative and tried to flee.   Shephard grabbed defendant's arm and tried to hold on to him but defendant continued to resist.  Officer Sousa, who had responded to the scene, assisted Shephard.  They were able to take control of defendant and directed him to the ground.   Shephard handcuffed defendant, placing defendant's hands behind his back, and proceeded to patsearch him.  Shephard did not find any weapons on defendant. He placed defendant in the rear of the patrol car.  Shephard and Sousa then conducted patsearches of the two passengers who were in the car.

Sergeant Stec, who was also on the scene, told Shephard that it looked like defendant was "slipping his cuffs," meaning that he had taken his arms under his legs and brought them back in front of him.  Shephard immediately returned to his patrol car to investigate. He opened the back door of the car and found defendant in a hunched position.  He reached in and grabbed defendant's right arm and tried to pull him out of the car.  Defendant "very quickly" spun his legs so his feet came out of the door.  Shephard still had a hold on defendant's arm; defendant's hands were between his legs.  As defendant got out of the car, he raised his hands, and Shephard saw that defendant had something in them.  He heard a gunshot at about the same time as Stec screamed, "Gun."   Shephard pushed defendant's hands down and got behind him.  He placed defendant in a bear hug and directed him to the ground.   Stec assisted Shephard in getting defendant on the ground.  The gun slid to the pavement.

*People v. Bueno*, No. A132986, 2014 WL 2178781, at *1-2 (Cal. Ct. App. May 22, 2014), *as modified on denial of reh'g* (June 18, 2014), *review denied* (July 30, 2014).

## II.  Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

3

1    Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

2    corpus relief:

3           An application for a writ of habeas corpus on behalf of a
            person in custody pursuant to the judgment of a State court shall not
4           be granted with respect to any claim that was adjudicated on the
            merits in State court proceedings unless the adjudication of the
5           claim -

6           (1) resulted in a decision that was contrary to, or involved
            an unreasonable application of, clearly established Federal law, as
7           determined by the Supreme Court of the United States; or

8           (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
9           State court proceeding.

10   For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

11   holdings of the United States Supreme Court at the time of the last reasoned state court decision.

12   *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

13   ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v.

14   Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining

15   what law is clearly established and whether a state court applied that law unreasonably." *Stanley*,

16   633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

17   precedent may not be "used to refine or sharpen a general principle of Supreme Court

18   jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall*

19   *v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155

20   (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

21   widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

22   be accepted as correct. *Id.*  Further, where courts of appeals have diverged in their treatment of

23   an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

24   *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

25   A state court decision is "contrary to" clearly established federal law if it applies a rule

26   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

27   precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003).

28   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

4

1   writ if the state court identifies the correct governing legal principle from the Supreme Court's

2   decisions, but unreasonably applies that principle to the facts of the prisoner's case. [3] *Lockyer v.*

3   *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

4   (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

5   court concludes in its independent judgment that the relevant state-court decision applied clearly

6   established federal law erroneously or incorrectly.  Rather, that application must also be

7   unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473

8   (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

9   review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

10   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

11   'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v.*

12   *Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

13   Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

14   must show that the state court's ruling on the claim being presented in federal court was so

15   lacking in justification that there was an error well understood and comprehended in existing law

16   beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

17       If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

18   court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

19   527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

20   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

21   2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

22   de novo the constitutional issues raised.").

23       The court looks to the last reasoned state court decision as the basis for the state court

24   judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  If

25   the last reasoned state court decision adopts or substantially incorporates the reasoning from a

26   ───────────────────

27       [3]   Under § 2254(d)(2), a state court decision based on a factual determination is not to be
    overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
    presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,

28   384 F.3d 628, 638 (9th Cir. 2004)).

1   previous state court decision, this court may consider both decisions to ascertain the reasoning of

2   the last decision.  *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

3   a federal claim has been presented to a state court and the state court has denied relief, it may be

4   presumed that the state court adjudicated the claim on the merits in the absence of any indication

5   or state-law procedural principles to the contrary."  *Richter*, 562 U.S. at 99.  This presumption

6   may be overcome by a showing "there is reason to think some other explanation for the state

7   court's decision is more likely."  *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

8   Similarly, when a state court decision on a petitioner's claims rejects some claims but does not

9   expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that

10  the federal claim was adjudicated on the merits.  *Johnson v. Williams*, ___ U.S. ___, ___, 133

11  S.Ct. 1088, 1091 (2013).

12          Where the state court reaches a decision on the merits but provides no reasoning to

13  support its conclusion, a federal habeas court independently reviews the record to determine

14  whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

15  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

16  review of the constitutional issue, but rather, the only method by which we can determine whether

17  a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.  Where no

18  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

19  reasonable basis for the state court to deny relief."  *Richter*, 562 U.S. at 98.

20          A summary denial is presumed to be a denial on the merits of the petitioner's claims.

21  *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

22  just what the state court did when it issued a summary denial, the federal court must review the

23  state court record to determine whether there was any "reasonable basis for the state court to deny

24  relief."  *Richter*, 562 U.S. at 98.  This court "must determine what arguments or theories ... could

25  have supported, the state court's decision; and then it must ask whether it is possible fairminded

26  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

27  decision of [the Supreme] Court."  *Id.* at 102.  The petitioner bears "the burden to demonstrate

28  /////

1    that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d

2    925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

3           When it is clear, however, that a state court has not reached the merits of a petitioner's

4    claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

5    habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

6    F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

7    **III. Petitioner's Claims**

8           **A. Denial of Petitioner's Discovery Motions**

9           In petitioner's first two claims for relief, he argues that the trial court violated state law

10   and the federal constitution when it denied his requests for discovery of the personnel records of

11   Officer Shepard and statements from Shephard and several other police officers who witnessed

12   the altercation.  ECF No. 1 at 7-11.[4]  The California Court of Appeal denied these claims, largely

13   on state law grounds, reasoning as follows:

14           **B. Pitchess motion**

15           Prior to trial, defendant made a *Pitchess* motion seeking to discover
16           any of Shephard's personnel records that reflect any instances of
         misconduct.  He argued that Shephard made false statements in his
17           police report and at the preliminary hearing, and that any past
         complaints against Shephard were relevant to the issue of his
18           credibility.

19           The Suisun City Police Department opposed the motion, arguing
         that defendant had not made the required showing that the
20           information could not be obtained by less intrusive means, and that
         defendant had failed to demonstrate good cause for the discovery of
21           the material sought.  The trial court denied the motion, finding that
         defendant had not presented a plausible scenario of police
22           misconduct, and that there was nothing in the affidavits presented
         that suggested that Shephard had been dishonest or misleading.

23           Defendant made a second motion pursuant to section 1054.15 to
24           request discovery of two arrest reports of Darion Jamaal Thomas
         (the owner of the car defendant was driving when he was arrested)
25           and the statements of Shephard and the other officers who
         witnessed the incident which were made during the police
26           department's internal investigation.   The trial court denied the
         motion, finding that except for the statements of Shephard and the

27    _____

28           [4]  Page number citations such as this one are to the page numbers reflected on the court's
     CM/ECF system and not to page numbers assigned by the parties.

other officers, the prosecutor had complied with the motion. The court further ruled that the statements were part of the police department's internal affairs investigation and were within defendant's earlier *Pitchess* motion, which the court had already denied.

Defendant then filed a third motion pursuant to *Pitchess* again seeking the personnel records of Shephard and the other officers who witnessed the incident including the officers' statements made in the internal affairs investigation. The court held an in camera hearing on the motion. It found that the officers' original reports of the incident were consistent with their statements during the internal investigation and that there were no factual discrepancies noted in the report of the internal investigation. The court remarked that it would so inform defense counsel and the deputy district attorney. The clerk's minutes confirm the court's remarks. We must presume that the court informed the parties of its ruling. (Evid.Code, § 664 ["It is presumed that official duty has been regularly performed"].)

"[O]n a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct against the defendant. [Citation.] Good cause for discovery exists when the defendant shows both '"materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' [Citation.] A showing of good cause is measured by 'relatively relaxed standards' that serve to 'insure the production' for trial court review of 'all potentially relevant documents.' [Citation.]" (*People v. Gaines* (2009) 46 Cal.4th 172, 179.) The "two-part showing of good cause is a 'relatively low threshold for discovery.' [Citation.]" (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019.) The *Warrick* court explained that the affidavit "must propose a defense or defenses to the pending charges." (*Id.* at p. 1024.) The good cause showing "requires a defendant . . . to establish not only a logical link between the defense proposed and the pending charge, but also to articulate how the discovery being sought would support such a defense or how it would impeach the officer's version of events." (*Id.* at p. 1021.) The information which the defendant seeks must be described with some specificity to ensure that the request is "limited to instances of officer misconduct related to the misconduct asserted by the defendant." (Ibid.)

Moreover, the affidavit must "describe a factual scenario supporting the claimed officer misconduct. That factual scenario, depending on the circumstances of the case, may consist of a denial of the facts asserted in the police report." (*Warrick, supra*, 35 Cal.4th at pp. 1024–1025.) However, the factual scenario must be a "plausible scenario of officer misconduct," a scenario that "might or could have occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Id.* at p. 1026.)

8

When the defendant establishes good cause for *Pitchess* discovery, he or she is entitled to the trial court's in-chambers review of the arresting officers' personnel records relating to the plausible scenario of officer misconduct. (*Warrick, supra*, 35 Cal.4th at p. 1027.) The purpose of the in-chambers review is to determine relevance under the provisions of Evidence Code section 1045. This review allows the court to issue orders protecting the officer or agency from "unnecessary annoyance, embarrassment or oppression." (*Id.*, subd. (d).) These provisions strike a balance between the legitimate privacy interests of the officer and the defendant's right to a fair trial. (*Warrick, supra*, 35 Cal.4th at p. 1028.)

Relying on *Rezek v. Superior Court* (2012) 206 Cal.App.4th 633, defendant contends that the trial court should have ordered the disclosure of the officers' statements. In *Rezek*, the court held a defendant may obtain the statements of witnesses to the crime for which the defendant is charged even if the statements were obtained as a result of an internal affairs investigation and placed in an officer's personnel file so long as the disclosure is not precluded by Evidence Code section 1045.6 (*Id.* at pp. 642–643.) The *Rezek* court remanded the matter to the trial court to conduct an in camera inspection of the relevant documents as provided by Evidence Code section 1045, subdivision (b), and to disclose any documents not precluded from disclosure by statute. (*Id.* at pp. 644.)

*Rezek* is of no assistance to defendant. Here, the trial court did conduct an in camera hearing to determine whether the discovery sought was relevant to defendant's trial. The record reflects that the court found that the officers' statements of the incident were consistent with the police department's internal investigation and that the court would so inform the parties. No error appears.

Defendant also argues that the court violated his right to due process because it should have granted his motion for discovery of the witness statements even without a *Pitchess* motion. The courts, however, have consistently rejected this argument. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81–82 [the *Pitchess* procedure is codified by statute]; *Abatti v. Superior Court* (2003) 112 Cal.App.4th 39, 57 [*Pitchess* procedure is sole means by which discovery of confidential peace officer files can be obtained].) The court did not violate due process by following the *Pitchess* procedure in reviewing defendant's discovery motions. We have reviewed the court's rulings on defendants' three motions seeking the witness statements of the officers and have concluded that the court did not abuse its discretion in denying the motions. (*People v. Rezek, supra*, 206 Cal.App.4th at p. 641 [*Pitchess* motion is within the wide discretion of the trial court].)

*Bueno*, 2014 WL 2178781, at *4-6.

After the California Court of Appeal ruled on petitioner's appellate claims, the California

Supreme Court issued a decision in *Long Beach Police Officers Association v. City of Long*

9

1    *Beach*, 59 Cal.4th 59 (2014).  That decision clarified and limited the information that is covered

2    by the *Pitchess* statutes' confidentiality protections for personnel records.  In pertinent part, the

3    court explained:

> [M]any records routinely maintained by law enforcement agencies
> are not personnel records. For example, the information contained
> in the initial incident reports of an on-duty shooting are typically
> not "personnel records" as that term is defined in Penal Code
> section 832.8. It may be true that such shootings are routinely
> investigated by the employing agency, resulting eventually in some
> sort of officer appraisal or discipline. But only the records
> generated in connection with that appraisal or discipline would
> come within the statutory definition of personnel records . . . .

9    *Id.* at 71.  Petitioner argues that the trial court violated the holding in *Long Beach Police Officers*

10   *Association* when it rejected his request for witness statements contained in the initial incident

11   reports.  ECF No. 1 at 7-11.

12         Respondent argues that petitioner's claims in this regard are based solely on state law

13   violations and are therefore not cognizable in this federal habeas corpus proceeding.  ECF No. 10-

14   2 at 9-10.  This court agrees that to the extent petitioner's claims challenging the trial court's

15   denial of his discovery motions concern violations of state law, petitioner has failed to state a

16   cognizable federal habeas claim.  As set forth above, federal habeas relief does not lie for

17   violations of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Jammal v. Van de Kamp*, 926

18   F.2d 918, 919 (9th Cir. 1991) ("the issue for us, always, is whether the state proceedings satisfied

19   due process; the presence or absence of a state law violation is largely beside the point").  The

20   decision of the California Court of Appeal that the trial court's discovery rulings were in

21   compliance with California law, derived from its analysis of state law, is binding on this court.

22   *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for

23   errors of state law . . . .").

24         Respondent also argues that petitioner failed to exhaust any federal claims related to the

25   denial of his discovery motions.  The court notes, however, that in his briefs filed in both the

26   California Court of Appeal and the California Supreme Court, petitioner cited various federal

27   authorities in support of these claims.  *See, e.g.,* Resp't's Ex. E (Appellant's Supplemental Brief)

28   at 14, 15, 17 (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), *Faretta v. California*, 422 U.S.

1    806, 819-20 (1975), *Brady v. Maryland*, 373 U.S. 83 (1963), and *Jencks v. United States*, 353

2    U.S. 657, 669 (1957)); Resp't's Ex. E (Appellant's Reply Brief) at 19 (citing *Jencks*, 353 U.S. at

3    667); Resp't's Ex. F (Petition for Review) at 6 (citing *Brady*, 373 U.S. at 83).   In the traverse,

4    petitioner argues that he exhausted a federal due process claim.   *See* ECF No. 14 at 1-2.

5         Exhaustion of state court remedies is a prerequisite to the granting of a petition for a writ

6    of habeas corpus.   28 U.S.C. §§ 2254(b)(1).   However, "[a]n application for a writ of habeas

7    corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the

8    remedies available in the courts of the State."   28 U.S.C. § 2254(b)(2).   Notwithstanding the

9    exhaustion requirement, this court recommends that petitioner's federal claims, if any, be denied

10   on the merits.

11        On collateral review of a state court criminal judgment under 28 U.S.C. § 2254, an error is

12   harmless unless it had "a substantial and injurious effect or influence in determining the jury's

13   verdict."   *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993).   In *Fry v. Pliler*, 551 U.S. 112, 121-

14   22 (2007), the United States Supreme Court clarified that "in § 2254 proceedings a federal court

15   must assess the prejudicial impact of constitutional error in a state-court criminal trial under the

16   'substantial and injurious effect' standard set forth in *Brecht* 507 U.S. 619."   *Fry*, 551 U.S. at

17   121-22.   *See also Davis v. Ayala*, ___ U.S. ___, 135 S. Ct. 2187, 2197-98 (2015).   Assuming

18   arguendo that the trial court erred in denying petitioner's discovery motions, petitioner has failed

19   to demonstrate that the error had a "substantial and injurious effect or influence in determining

20   the jury's verdict."   In particular, there is no evidence that anything contained in the personnel

21   records of Officer Shephard or police officer witness statements would have been helpful to

22   petitioner's defense.   In short, petitioner has failed to show that his inability to obtain copies of

23   these documents violated his right to a fair trial or any other federal constitutional right.

24   Accordingly, he is not entitled to habeas relief with respect to any such claim.

25        **B.  Denial of Right to Confrontation**

26        In his second ground for relief, petitioner claims that the trial court violated his rights to

27   present a defense and to cross-examine the witnesses against him when it prevented him from

28   cross-examining Officer Shephard about prior inconsistent statements he made with regard to

whether he touched petitioner's hand, or just his arm, when he pulled him out of the car.  ECF No. 1 at 11-16.  Petitioner contends Shephard's testimony that he pulled petitioner out of the car by his hand could have reinforced his defense that the gun discharged accidentally.  *Id.*

The California Court of Appeal explained the background to these claims and its ruling thereon, as follows:

### A. Impeachment evidence

Defendant contends that Shephard gave conflicting testimony both at the preliminary hearing and at trial and that the trial court prevented him from impeaching Shephard about whether he grabbed defendant's hand rather than his arm when he pulled him out of the car.  The trial court found that defense counsel was taking Shephard's testimony out of context and that Shephard had not testified that he grabbed defendant's hand.  Consequently, the court did not allow the impeachment.  Defendant argues that the court's ruling violated his right to present a defense.  We disagree.

Defendant focuses on the following exchange during the preliminary hearing after Shephard had testified that he opened the rear passenger door of the patrol vehicle and grabbed defendant "probably by his right arm."  "[MS. HARRISON (deputy district attorney) ]: How did you do that? [¶] [OFFICER SHEPHARD]: I opened the door and grabbed it. [¶] [MS. HARRISON]: So you reached in with your left arm? [¶] [OFFICER SHEPHARD]: I reached in, I believe, with my left hand and grabbed his arm, or maybe my right. [¶] [MS. HARRISON]: And what did you notice when you grabbed his right arm? [¶] [OFFICER SHEPHARD]: Nothing at first.  He was hunched over like he didn't want me to see his hands or whatever, something like that, trying to conceal something, so I grabbed his *hand* and kind of pulled it out.  He kicked his feet out of the car —" (Italics added.)  Shephard proceeded to testify that he had touched defendant's right arm with his left hand, that defendant was in a hunched position, and that his hands were in front of him and he appeared to be concealing something.

At trial, Shephard testified that when he opened the door of the patrol car to check on defendant, he was hunched over, and Shephard reached in, grabbed defendant's arm, and tried to pull him out of the car.  On cross-examination, defense counsel attempted to impeach Shephard with his preliminary hearing testimony in which he had stated that he had grabbed defendant's hand.  The following colloquy occurred: "[MS. JOHNSON]: Okay.  So you reached in and you grabbed him and pulled him to the opening of the door, right? [¶]  [OFFICER SHEPHARD]: No. [¶]  [MS. JOHNSON]: You did not reach in and grab him? [¶]  [OFFICER SHEPHARD]: I reached in and grabbed him. [¶]  [MS. JOHNSON]: Okay. [¶] [OFFICER SHEPHARD]:  But I am not going to just pull him out because I don't know what's in his - I can't see his hands. [¶]  [MS. JOHNSON]: Okay.  Earlier you testified that you reached in and

you grabbed his hand, and then you changed it to arm; do you recall that? [¶] [OFFICER SHEPHARD]: Yes. [¶] [MS. JOHNSON]: Okay. But you actually did reach in and grab his hand, right? [¶] [OFFICER SHEPHARD]: No, I didn't grab his hand. I couldn't see his hands. [¶] [MS. JOHNSON]: Do you recall testifying at the prior hearing in May of 2010, that you did actually reach in and grab his hand? [¶] [OFFICER SHEPHARD]: I don't recall saying hand. I think I may have said forearm." Defense counsel then sought to impeach Shephard with his preliminary hearing testimony when he testified that he "grabbed [defendant's] hand and kind of pulled it out." The prosecutor objected that defense counsel was misstating the testimony. The trial court agreed, noting that Shephard had testified that he had grabbed defendant's right arm, and that the line defense counsel was relying on was taken "completely out of context." The court remarked, "Ms. Johnson, he doesn't say that in this. I mean, we can read the whole transcript pages 30 and 31 for the jury I think, and let them decide what he is saying."

"[T]he trial court has discretion to exclude impeachment evidence, including a prior inconsistent statement, if it is collateral, cumulative, confusing, or misleading." (*People v. Price* (1991) 1 Cal.4th 324, 412; *People v. Douglas* (1990) 50 Cal.3d 468, 509.) Our reading of the preliminary hearing transcript comports with that of the trial court. Shephard testified consistently at the preliminary hearing that he had grabbed defendant's right arm, and that he could not see defendant's hands because defendant was hunched over trying to conceal something. After Shephard mistakenly testified on direct examination during the preliminary hearing that "he grabbed [defendant's] hand and kind of pulled it out," defense counsel tried to get Shephard to repeat that testimony on cross-examination. Thus, defense counsel questioned Shephard as follows: "[MS. JOHNSON]: So it was Mr. Bueno's right arm that was closest to the door that you opened, right? [¶] [OFFICER SHEPHARD]: Yes. [¶] [MS. JOHNSON]: So when you reached in, his hands were together, right? [¶] [OFFICER SHEPHARD]: Yes. [¶] [MS. JOHNSON]: They were handcuffed, right? [¶] [OFFICER SHEPHARD]: Yes. [¶] [MS. JOHNSON]: And you said that you grabbed his hands, right? [¶] [OFFICER SHEPHARD]: I believe I grabbed his arm. [¶] [MS. JOHNSON]: His arm? [¶] [OFFICER SHEPHARD]: I believe it was his forearm or - around his - probably his forearm, yeah. [¶] [MS. JOHNSON]: Okay. Grabbed his forearm, and the purpose of this was to get his hands out from between his legs. Is that what your purpose was? [¶] [OFFICER SHEPHARD]: The purpose was to see what was in his hands and at the same time remove him from the vehicle." A few questions later, there was another exchange on the same issue: "[MS. JOHNSON]: Yes. Were you pulling him towards the door? [¶] [OFFICER SHEPHARD]: No. I grabbed his hand, grabbed his forearm, and as I touched him, I believe his foot swung out. Then we - I think it was kind of in unison that it came out of the door. [¶] [MS. JOHNSON]: Okay. You grabbed his right forearm and his left hand is coming with it? [¶] [OFFICER SHEPHARD]: I hope so. [¶] [MS. JOHNSON]: Because his hands are together, right? [¶] [OFFICER

SHEPHARD]: Uh-huh. [¶] [THE COURT]: That is a 'yes?' [¶] [OFFICER SHEPHARD]: Yes."

Hence, a complete reading of Shephard's preliminary hearing testimony makes clear that Shephard consistently testified that he grabbed defendant's right arm or forearm to pull him out of the car. While Shephard made two statements indicating that he grabbed defendant's hand, he corrected himself and subsequently testified that he grabbed defendant's arm or forearm. Thus, the record as a whole shows that Shephard misspoke when he said he grabbed defendant's hand. On these facts, the trial court did not abuse its discretion in limiting defendant's attempt to impeach Shephard with his preliminary hearing testimony.

Even if the trial court erred in limiting the impeachment evidence, the error was harmless. The evidence showed that defendant was in a hunched position in the car, and that Shephard did not see his hands until defendant was out of the car and had fired the gun. Indeed, Shephard testified that defendant was trying to conceal something in his hands. Had the court allowed the impeachment where Shephard said "hand" instead of arm or forearm, it would not have changed the result because it was clear from Shephard's testimony that he did not see defendant's hands when he was attempting to remove defendant from the patrol car. Rather, the evidence showed that defendant's hunched position prevented Shephard from seeing defendant's hands and the concealed weapon they held. Any error in not allowing the impeachment was thus harmless beyond a reasonable doubt. (*Chapman v. California* (1978) 386 U.S. 18, 24.)

Defendant also asserts that the court's admonition to the jury the day following its exclusion of the impeachment evidence did not mitigate its comments that suggested defense counsel intended to mislead the jury.[5] He argues that the remarks violated his right to present a defense, because the jury was left with the impression that there had been no prior inconsistent statements or that they were of little significance. Defendant did not make any objection on constitutional grounds to the court's earlier ruling excluding the evidence or to the court's admonition. The claim is therefore not

---

[5]   The court remarked, "Yesterday during the cross-examination of the first witness, when the witness was being asked about some previous testimony, the Court, at least [at] one point and I might have said this twice, and I indicated to defense counsel that I felt that she was misleading the jury. [¶] Ladies and gentlemen, I'm going to direct you, first of all, to disregard those comments. I have given some thought to this. I do not - first of all, Ms. Johnson is an experienced attorney. She has an excellent reputation and I do not believe that she was intending to mislead the jury in any way and I want you to disregard the comment or comments that I made in that regard. [¶] I'm also going to remind you that nothing the Court - none of the Court's rulings or comments made during the course of the trial should in any way affect your decision about the facts. Your decision should be made based on the evidence alone and not from any inference you take from a comment made by the Court, so please keep that in mind, as well. With that we will continue on."

14

1

preserved for appeal.  (*People v. Earp* (1999) 20 Cal.4th 826, 893.)[6]
In any event, we must presume that the jury understood and

2

followed the court's admonition.  (*See People v. Martin* (2000) 78
Cal.App.4th 1107, 1111.)

3

4

*Bueno*, 2014 WL 2178781, at **2-3.

5

Respondent argues that petitioner's claims in this regard are subject to a procedural

6

default because of the Court of Appeal's statement that petitioner failed to "make any objection

7

on constitutional grounds to the court's earlier ruling excluding the evidence or to the court's

8

admonition."  As a general rule, "[a] federal habeas court will not review a claim rejected by a

9

state court 'if the decision of [the state] court rests on a state law ground that is independent of the

10

federal question and adequate to support the judgment."  *Walker v. Martin*, 562 U.S. 307, 314

11

(2011) (quoting *Beard v. Kindler*, 558 U.S. 53 (2009)).  However, a reviewing court need not

12

invariably resolve the question of procedural default prior to ruling on the merits of a claim.

13

*Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *see also Franklin v. Johnson*, 290 F.3d 1223,

14

1232 (9th Cir. 2002): ("Procedural bar issues are not infrequently more complex than the merits

15

issues presented by the appeal, so it may well make sense in some instances to proceed to the

16

merits if the result will be the same"); *Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004) (noting

17

that although the question of procedural default should ordinarily be considered first, a reviewing

18

court need not do so invariably, especially when the issue turns on difficult questions of state

19

20

[6]  In a petition for rehearing, defendant contends that the waiver rule set forth in *Earp* does
not apply to evidentiary rulings.  In *People v. Partida* (2005) 37 Cal.4th 428, 435 (*Partida*), our

21

Supreme Court made an exception to the general rule that a defendant may not argue on appeal
that the trial court should have excluded the evidence for a reason not asserted at trial.  (*Partida,*

22

*supra*, 37 Cal.4th at pp. 433–434.)  The *Partida* court recognized that a defendant's new
constitutional arguments are not forfeited on appeal if "the new arguments do not invoke facts or

23

legal standards different from those the trial court itself was asked to apply, but merely assert that
the trial court's act or omission, insofar as wrong for the reasons actually presented to that court,

24

had the additional legal consequence of violating the Constitution."  (*People v. Boyer* (2006) 38
Cal.4th 412, 441, fn. 17.)  We need not decide whether defendant's constitutional challenges on

25

appeal to the court's evidentiary ruling invoked new facts or legal standards not considered in the

26

trial court because we have concluded that any error in not admitting the impeachment evidence
was harmless beyond a reasonable doubt, and that the court's admonition to the jury mitigated the

27

court's comments that defense counsel intended to mislead the jury.  Defendant's arguments that
the court's ruling infringed his rights to confront witnesses and to due process fail on the merits.

28

1    law).  Where deciding the merits of a claim proves to be less complicated and less time-

2    consuming than adjudicating the issue of procedural default, a court may exercise discretion in its

3    management of the case to reject the claim on the merits and forgo an analysis of procedural

4    default.  *See Franklin*, 290 F.3d at 1232 (citing *Lambrix*, 520 U.S. at 525).  This court concludes

5    that petitioner's claims can be resolved more easily by addressing them on the merits.

6    Accordingly, the court will assume that they are not defaulted.

7         Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in

8    the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution

9    guarantees criminal defendants "a meaningful opportunity to present a complete defense" and the

10   right to present relevant evidence in their own defense.  *Holmes v. South Carolina*, 547 U.S. 319,

11   324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).  This right is not unlimited,

12   but rather is subject to reasonable restrictions.  *United States v. Scheffer*, 523 U.S. 303, 308

13   (1998); *Alcala v. Woodford*, 334 F.3d 862, 877 (9th Cir. 2003).  The Constitution permits judges

14   to exclude evidence "if its probative value is outweighed by certain other factors such as unfair

15   prejudice, confusion of the issues, or potential to mislead the jury."  *Holmes*, 547 U.S. at 319.

16        The Sixth Amendment to the United States Constitution grants a criminal defendant the

17   right "to be confronted with the witnesses against him."  U.S. CONST. amend. VI.  "The 'main

18   and essential purpose of confrontation is to secure for the opponent the opportunity of cross-

19   examination.'"  *Fenenbock v. Director of Corrections for California*, 692 F.3d 910, 919 (9th Cir.

20   2012) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986)).  However, Confrontation

21   Clause violations are subject to harmless error analysis.  *Whelchel v. Washington*, 232 F.3d 1197,

22   1205-06 (9th Cir. 2000).  "In the context of habeas petitions, the standard of review is whether a

23   given error 'had substantial and injurious effect or influence in determining the jury's verdict.'"

24   *Christian v. Rhode*, 41 F.3d 461, 468 (9th Cir. 1994) (quoting *Brecht*, 507 U.S. at 637). Under

25   this standard of review:

26        [T]he question is, not were [the jurors] right in their judgment,
          regardless of the error or its effect upon the verdict.  It is rather
27        what effect the error had or reasonably may be taken to have had
          upon the jury's decision . . . .  The inquiry cannot be merely whether
28        there was enough to support the result, apart from the phase

16

1         affected by the error.  It is rather, even so, whether the error itself
       had substantial influence.

2

3  *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946).

4        Assuming *arguendo* that the trial court violated petitioner's right to confrontation by

5  limiting the cross-examination of Officer Shepard and admonishing petitioner's trial counsel, any

6  error was harmless.  Because Officer Shephard consistently maintained that he pulled petitioner

7  out of the vehicle by his arm, and not by his hand, any error in excluding Shephard's mistaken

8  use of the word "hand" at the preliminary hearing could not have changed the result of these

9  proceedings.  Even if the trial judge had allowed petitioner's trial counsel to continue his cross-

10  examination on this subject, the jury ultimately would have learned that Shephard's preliminary

11  hearing testimony about pulling petitioner's hand was simply a mistake.

12        The court also notes there is no evidence Officer Shephard "grabbed Petitioner by his

13  hands and caused the gun to go off" as petitioner claims.  ECF No. 14 at 4.  Both officers at the

14  scene testified that petitioner fired his gun after he exited the vehicle.  Further, there is no

15  evidence that the weapon discharged in the car, as it would have done if Officer Shephard's

16  actions in grabbing petitioner's hand while he was still seated in the car had caused his gun to go

17  off.  Rather, the evidence reflects that the gun was fired outside the vehicle and that the bullet hit

18  the pavement.  *See* Reporter's Transcript on Appeal (RT) at 156-58, 264, 320-22.  Petitioner

19  argues in the traverse that it is possible his gun went off after Officer Shephard "squeezed

20  Petitioner's hands as he pulled him up and out of the car, and the squeeze caused the gun to go

21  off."  ECF No. 14 at 7.  This assertion is based on pure speculation and is insufficient to establish

22  prejudice.

23        Under the circumstances of this case, the trial court's handling of Officer Shephard's

24  cross-examination on the subject of whether he grabbed petitioner's hand or his arm before he

25  pulled him from the car could not have had a "substantial and injurious effect or influence" on the

26  verdict.  *Brecht*, 507 U.S. at 637.  Accordingly, petitioner is not entitled to relief on these claims.

27  /////

28  /////

1    ## C. Prosecutorial Misconduct

2          In his final ground for relief, petitioner claims that the prosecutor committed misconduct

3    when she "elicited false testimony" that Officer Shephard "never said he touched the defendant's

4    hands, and then failed to correct the false testimony." ECF No. 1 at 17.  The California Court of

5    Appeal denied this claim, reasoning as follows:

6                   Defendant further contends that the prosecutor elicited false
                    testimony from Shephard, who testified that he never said he
7                   touched defendant's hand.  Again, defendant failed to preserve this
                    claim on appeal because he did not object to the alleged false
8                   testimony or prosecutorial misconduct at trial.  (*See People v.
                    Musselwhite* (1998) 17 Cal.4th 1216, 1253.)
9
                    Defendant refers to a portion of the prosecutor's redirect
10                  examination of Shephard as false: "[MS. HARRISON]:  So when
                    counsel indicates that you . . . testified that you grabbed his hands
11                  and pulled his hands up, that is incorrect; you never testified to that;
                    is that a fair statement?  [¶]  [SHEPHARD]:  Yes."  The prosecutor
12                  also asked, "So did you ever refer to touching the defendant's
                    hands?"  Shephard responded, "No."
13
                    Defendant contends that this testimony was false because Shephard
14                  testified that he had grabbed defendant's hand when he pulled him
                    out of the car.  As the trial court found, however, it was clear from
15                  reading Shephard's complete testimony at the preliminary hearing
                    that Shephard misspoke when he said that he grabbed defendant's
16                  hand.  Shephard consistently testified on both direct and cross-
                    examination, that he could not see defendant's hands when he was
17                  in the patrol car because defendant was in a hunched position, and
                    that he had grabbed defendant's right arm to pull him out of the car.
18                  To the extent that Shephard's testimony at trial was incorrect given
                    the misstatement during his preliminary hearing testimony that he
19                  grabbed defendant's hand, even if the prosecutor's offer of
                    Shephard's trial testimony could be considered misconduct, we
20                  cannot conclude that defendant was prejudiced.  (*See People v.
                    Green* (1980) 27 Cal.3d 1, 29 [prosecutorial misconduct requires
21                  reversal only when, viewing the record as a whole, it results in a
                    miscarriage of justice].)  The clear import of Shephard's testimony
22                  was that he could not see defendant's hands when he pulled him out
                    of the car and that it was not until the gun fired that he realized that
23                  defendant was armed.  In view of this evidence of defendant's guilt,
                    defendant was not prejudiced by the prosecutor's offer of
24                  Shephard's testimony.

25   *Bueno*, 2014 WL 2178781, at *2-4.

26          A criminal defendant's due process rights are violated when a prosecutor's misconduct

27   renders a trial fundamentally unfair.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Claims of

28   prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to

1    determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the

2    resulting conviction a denial of due process.'" *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir.

3    1995) (citation omitted).  *See also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Donnelly v.*

4    *DeChristoforo*, 416 U.S. 637, 643 (1974); *Towery v. Schriro*, 641 F.3d 300, 306 (9th Cir. 2010).

5    Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial

6    misconduct resulted in actual prejudice.  *Darden*, 477 U.S. at 181-83.  *See also Towery*, 641 F.3d

7    at 307 ("When a state court has found a constitutional error to be harmless beyond a reasonable

8    doubt, a federal court may not grant habeas relief unless the state court's determination is

9    objectively unreasonable").  Prosecutorial misconduct violates due process when it has a

10   substantial and injurious effect or influence in determining the jury's verdict.  *See Ortiz-Sandoval*

11   *v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

12           A violation of a defendant's rights occurs if the government knowingly uses false

13   evidence in obtaining a conviction.  *Giglio v. United States*, 405 U.S. 150, 153-54 (1971); *Napue*

14   *v. Illinois*, 360 U.S. 264, 269 (1959).  There are several components to establishing a claim for

15   relief based on the prosecutor's introduction of perjured testimony at trial.  First, the petitioner

16   must establish that the testimony was false.  *United States v. Polizzi*, 801 F.2d 1543, 1549-50 (9th

17   Cir. 1986).  Second, the petitioner must demonstrate that the prosecution knowingly used the

18   perjured testimony.  *Id.*  Finally, the petitioner must show that the false testimony was material.

19   *United States v. Juno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003).  False evidence is material "if

20   there is any reasonable likelihood that the false [evidence] could have affected the judgment of

21   the jury."  *Hein v. Sullivan*, 601 F.3d 897, 908 (9th Cir. 2010) (quoting *Bagley*, 473 U.S. at 678).

22   Mere speculation regarding these factors is insufficient to meet petitioner's burden.  *United States*

23   *v. Aichele*, 941 F.2d 761, 766 (9th Cir. 1991).

24           Assuming *arguendo* that this claim is not subject to a procedural default, petitioner is not

25   entitled to habeas relief.  Petitioner has failed to demonstrate that the prosecutor committed

26   misconduct by knowingly presenting false testimony.  As set forth above, a review of Officer

27   Shephard's testimony, both at the preliminary hearing and at trial, reflects that he pulled

28   petitioner out of the vehicle by grabbing his arm.  Shephard explained that his reference at the

1    preliminary hearing to grabbing petitioner's hand was simply an error.  In light of this, the court

2    rejects petitioner's argument that the prosecutor deliberately elicited false testimony when she

3    asked Shephard whether he had ever testified that he grabbed petitioner by the hand and then

4    failed to correct it when he said no.  In fact, the "correct" testimony was that Officer Shepard did

5    not pull petitioner out of the vehicle by his hand.  Shepard's "false" testimony that he never stated

6    he grabbed petitioner's hand was essentially true and was, in any event, simply not material.

7         Even if the prosecutor committed misconduct by virtue of her direct examination on this

8    subject, petitioner has failed to demonstrate prejudice.  For the reasons explained above, and

9    viewing the record as a whole, this court concludes that the prosecutor's question to Officer

10   Shephard did not render the proceedings fundamentally unfair or have a substantial and injurious

11   effect or influence in determining the jury's verdict.

12        The decision of the California Court of Appeal denying petitioner's claim of prosecutorial

13   misconduct is not contrary to or an unreasonable application of United States Supreme Court

14   authority.  Certainly it is not "so lacking in justification that there was an error well understood

15   and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*,

16   562 U.S. at 103."  Accordingly, petitioner is not entitled to relief on this claim.

17   **IV. Conclusion**

18        For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

19   application for a writ of habeas corpus be denied.

20        These findings and recommendations are submitted to the United States District Judge

21   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

22   after being served with these findings and recommendations, any party may file written

23   objections with the court and serve a copy on all parties.  Such a document should be captioned

24   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

25   shall be served and filed within fourteen days after service of the objections.  Failure to file

26   objections within the specified time may waive the right to appeal the District Court's order.

27   *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

28   1991).  In his objections petitioner may address whether a certificate of appealability should issue

1   in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section

2   2254 Cases (the district court must issue or deny a certificate of appealability when it enters a

3   final order adverse to the applicant).

4   DATED:  December 15, 2016.

5                                                    EDMUND F. BRENNAN
                                                     UNITED STATES MAGISTRATE JUDGE